## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON JAMPOL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>BLINK HOLDINGS, INC.<br><br>    Defendant. | Case No. 1:20-cv-2760-KPF |

---

### MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRAITON OR, ALTERNATIVELY, TO DISMISS PLAINTIFF'S AMENDED PUTATIVE CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) and 12(b)(1)

---

**GORDON & REES, SCULLY, MANSUKHANI LLP**
*Attorneys for Defendant Blink Holdings, Inc.*
1 Battery Park Plaza, 28th Floor
New York, NY 10004
T: (973) 549-2532
E: psiachos@gordonrees.com

*Of Counsel and on the Brief:*
Peter G. Siachos
JoAnna M. Doherty
D. Wes Meehan

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL ALLEGATIONS AND BACKGROUND ..................................................... 3

    A.  Blink's Mission ................................................................................................... 3

    B.  Allegations In The Amended Complaint .............................................................. 3

    C.  Plaintiff's Assent To Blink's Terms of Use ........................................................ 4

    D.  The Arbitration Agreement ................................................................................. 5

III.  LEGAL STANDARDS ................................................................................................. 6

    A.  Fed. R. Civ. P 12(b)(1) ...................................................................................... 6

    B.  Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6

IV.  THE AMENDED COMPLAINT REQUIRES DISMISSAL ........................................... 7

    A.  Plaintiff Agreed to Arbitrate His Claims Individually ......................................... 7

        i.  The Arbitration Agreement Is Valid ........................................................ 7

        ii.  The Arbitration Agreement Encompasses Plaintiff's Claims .................. 10

    B.  The Amended Complaint Fails As A Matter Of Law .......................................... 12

        i.  The Amended Complaint Alleges No Actionable Consumer Deception . 12

        ii.  Mandatory COVID-19 Closures Rendered Performance of the Membership Agreements Impossible ....................................................... 14

        iii.  Plaintiff's Unjust Enrichment and Money Had And Received Claims Are Impermissibly Duplicative ....................................................................... 15

        iv.  Plaintiff's Conversion Claim Is Fatally Duplicative And Lacks a Prima Facie Element ....................................................................................... 16

        v.  There Is No Basis For Punitive Damages ................................................ 18

        vi.  Florida, Illinois, Michigan and Texas Members Waived Their Claims ... 19

        vii.  Plaintiff Fails To Allege A Basis For Injunctive Relief ........................... 20

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abram Landau Real Estate v. Bevona*,
   123 F.3d 69 (2d Cir. 1997) ....................................................................................... 11

*Ackerman v. Coca-Cola Co.*,
   2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................ 12

*AD Rendon Communs., Inc. v. Lumina Ams., Inc.*,
   2006 U.S. Dist. LEXIS 37600 (S.D.N.Y. June 7, 2006) ........................................ 17

*American Express Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013) ................................................................................................. 7

*Amidax Trading. Grp. v. S.W.IF.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ..................................................................................... 6

*Arciniaga v. GMC*,
   460 F.3d 231 (2d Cir. 2006) ................................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 6, 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ................................................................................................. 7

*Banque Worms v. BankAmerica Int'l.*,
   77 N.Y.2d 362 (1991) ............................................................................................ 15

*Beardslee v. Inflection Energy, LLC*,
   2012 WL 5522912 (N.D.N.Y. 2012) ..................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 6

*Cafaro v. HMC*,
   2008 U.S. Dist. LEXIS 71724 (D.N.J. Sep. 5, 2008) ............................................ 18

*Cohen v. Am. Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013) .................................................................................. 16

*Collins Aikman Products Co. v. Bldg. Systems*,
   58 F.3d 16 (2d Cir. 1995) ....................................................................................... 11

*Commander Oil Corp. v. Advance Food Service Equipment*,
   991 F.2d 49 (2d Cir. 1993) ..................................................................................... 10

ii

*Dee v. Borough of Dunmore*,
   474 F. App'x 85 (3d Cir. 2012) .............................................................................. 19

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010) ..................................................................................... 6

*Dolori Fabrics, Inc. v. The Limited, Inc.*,
   662 F. Supp. 1347 (S.D.N.Y. 1987) ...................................................................... 20

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ............................................................................................. 7

*Euro Pac. Capital Inc. v. Bohai Pharms. Grp., Inc.*,
   2016 U.S. Dist. LEXIS 8335 (S.D.N.Y. 2016) .................................................... 10

*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*,
   541 F.3d 719 (7th Cir. 2008) ................................................................................. 18

*Felchak v. JP Morgan Chase Bank, N.A.*,
   2013 U.S. Dist. LEXIS 66805 (S.D. Tex. May 10, 2013) ..................................... 18

*Feld v. Postmates, Inc.*,
   F. Supp. 3d --, 2020 U.S. Dist. LEXIS 37686 (S.D.N.Y. Mar. 3, 2020) ............... 9

*Ferguson Transp. v. N. Am. Van Lines*,
   687 So. 2d 821 (Fla. 1996) .................................................................................... 18

*Fernandez v. City of N.Y.*,
   502 F. App'x 48 (2d Cir. 2012) ............................................................................... 9

*Field Day, LLC v. Cnty. of Suffolk*,
   463 F.3d 167 (2d Cir. 2006) ..................................................................................... 6

*Friedman v. Maspeth Fed. Loan & Say. Ass'n.*,
   13-CV-6295, 2014 WL 3473407 (E.D.N.Y. July 14, 2014) .................................... 6

*Fteja v. Facebook, Inc.*,
   841 F.Supp.2d 829 (S.D.N.Y. 2012) .................................................................. 8, 9

*Gilroy v Conway*,
   151 Mich. App 628 (1986) ..................................................................................... 18

*Guadagno v. E*Trade Bank*,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) .................................................................. 8

*Hancock v. Chi. Title Ins. Co.*,
   635 F. Supp. 2d 539 (N.D. Tex. 2009) ................................................................. 16

*Harrell v. Colonial Holdings, Inc.*
  923 F. Supp. 2d 813 (E.D. Va. 2013) ................................................................ 16

*Head v. Phillips Camper Sales & Rental, Inc.*,
  234 Mich.App. 94 (1999) ................................................................................... 18

*Holve v. McCormick & Co., Inc.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) .............................................................. 16

*In re Am. Express Fin. Advisors Secs. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ................................................................................. 7

*In re GM Air Conditioning Mktg. & Sales Practices Litig.*,
  406 F. Supp. 3d 618 (E.D. Mich. 2019) ............................................................ 16

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016) ................................ 12

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ............................................................................... 11

*Kamlar Corp. v. Haley*,
  224 Va. 699 (1983) ............................................................................................. 18

*Kersey v. Peoples' United Bank, N.A.*,
  2017 U.S. Dist. LEXIS 220119 (D. Mass. Nov. 7, 2017) ................................. 18

*Koch v. Acker, Merrall & Condit Co.*,
  967 N.E.2d 452 (N.Y. 2012) .............................................................................. 12

*Kommer v. Ford Motor Co.*,
  1:17-cv-296, 2017 U.S. Dist. LEXIS 118335 (N.D.N.Y. July 28, 2017) .......... 13

*Laurie Marie M. v. Jeffrey T.M.*,
  159 A.D.2d 52 (2d Dep't 1990) ......................................................................... 19

*Levin v. Gallery 63 Antiques Corp.*,
  2006 WL 2802008 (S.D.N.Y. Sept. 26, 2006) .................................................. 16

*Lewis v. Casey*,
  518 U.S. 343 (1996) ............................................................................................. 6

*Lewis v. Nat'l City Bank*,
  814 F. Supp. 696 (N.D. Ill. 1993) ...................................................................... 18

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001) .......................................................................... 10, 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 6

*Major v. McCallister*,
  302 S.W.3d 227 (Mo. Ct. App. 2009) .............................................. 8

*Martin v. Snap-Tite, Inc.*,
  641 F. App'x 126 (3d Cir. 2016) ...................................................... 16

*Martiny v. Introcaso-Allison*,
  2019 U.S. Dist. LEXIS 162694 (S.D.N.Y. Sep. 23, 2019) ................. 18

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ........................................................ 7, 8, 9

*Mitri v. Walgreen Co.*,
  660 F. App'x 528 (9th Cir. 2016) ..................................................... 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................ 7

*N. Hous. Int'l, L.L.C. v. PW Real Estate Invs., Inc.*,
  2003 Tex. App. LEXIS 9185 (Tex. App. Oct. 30, 2003) .................... 17

*NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*,
  770 F.3d 1010 (2d Cir. 2010) .......................................................... 10

*Nicholas v. Penn. State*,
  227 F.3d 133 (3d Cir. 2000) ............................................................ 18

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ...................................................... 7, 20

*Oldroyd v. Elmira Sav. Bank*,
  134 F.3d 72 (2d Cir. 1998) .............................................................. 11

*Paracor Fin., Inc. v. GE Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ........................................................... 16

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ............................................................ 11

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
  88 A.D.2d 883 (App. Div. 1982) ...................................................... 17

*Philibotte v. Nisource Corp. Servs. Co.*,
  793 F.3d 159 (1st Cir. 2015) ........................................................... 16

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ............................................................................................ 11

*Pungitore v. Barbera*,
506 F. App'x 40 (2d Cir. 2012) ........................................................................... 20

*Register.com v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ................................................................................. 8

*Reid v. Supershuttle Inc.*,
08-cv-4854, 2010 U.S. Dist. LEXIS 26831 (E.D.N.Y. Mar. 22, 2010) .................... 12

*Rightnour v. Tiffany & Co.*,
239 F. Supp. 3d 744 (S.D.N.Y. 2017) ..................................................................... 8

*Sage Realty Corp. v. Jugobanka, D.D.*,
1997 U.S. Dist. LEXIS 9301 (S.D.N.Y. 1997) ...................................................... 14

*Sea Byte, Inc. v. Hudson Marine Mgmt. Servs.*,
565 F.3d 1293 (11th Cir. 2009) ........................................................................... 16

*Serebryakov v. Golden Touch Transp. of NY, Inc.*,
12-CV-3990, 2015 U.S. Dist. LEXIS 36667 (E.D.N.Y. Mar. 23, 2015) .................. 11

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004) ................................................................................. 20

*Staff4Jobs, LLC v. List Logistics, LLC*,
3:18-cv-13399, 2019 U.S. Dist. LEXIS 107443 (D.N.J. June 27, 2019) ................. 16

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ............................................................................................ 18

*Telenor Mobile Commc'ns AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009) ................................................................................. 10

*Texas Nat'l Bank v. Karnes*,
717 S.W.2d 901 (Tex.1986) .................................................................................. 18

*Thyroff v. Nationwide Mut. Ins. Co.*,
360 Fed. Appx. 179 (2d Cir.2010) ........................................................................ 17

*Tomasino, v. Estee Lauder Co. Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..................................................................... 21

*Tulepan v. Roberts*,
2015 U.S. Dist. LEXIS 5488 (S.D. Fla. Jan. 16, 2015) .......................................... 18

*TVT Records v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ........................................................................ 10

*U.S. v. Gen. MacArthur Senior Vill.*,
    508 F.2d 377 (2d Cir. 1974) ...................................................................... 14

*Unifoil Corp. v. Cheque Printers & Encoders*,
    622 F. Supp. 268 (D.N.J. 1985) ................................................................. 18

*Usov v. Lazar*,
    2013 U.S. Dist. LEXIS 89257 (S.D.N.Y. June 18, 2013) ......................... 17

*Vera v. Saks & Co.*
    335 F.3d 109 (2d Cir. 2003) ...................................................................... 12

*Virgilio v. City of N.Y.*,
    407 F.3d 105 (2d Cir. 2005) ...................................................................... 19

*Walker v. Sheldon*,
    10 N.Y.2d 401 (1961) ................................................................................ 19

**Statutes**

9 U.S.C. § 4 ....................................................................................................... 7

C.C.C. § 3294 ................................................................................................... 18

Fla. Stat. § 768.72 ............................................................................................ 19

GBL § 349 ........................................................................................... 1, 12, 13, 14

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ............................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................ 1, 3, 6, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 3, 6, 12

**Other Authorities**

90 C.J.S. Trover and Conversion § 1 ............................................................. 18

*Lemley*, Terms of Use, 91 Minn. L. Rev. 459, 466 (2006) ............................... 8

Restatement (Second) of Contracts § 265 (1981) ......................................... 14

## I.      INTRODUCTION

In keeping with the Federal Arbitration Act's ("FAA") liberal policy in favor of arbitration, Plaintiff Brendan Jampol ("Plaintiff") should be required to arbitrate his grievances against Defendant Blink Holdings, Inc. ("Blink") individually.  Plaintiff twice indicated his assent, by clicking buttons to affirmatively accept Blink's Terms of Use while signing up for a Blink membership and logging into Blink's mobile fitness app, to a broad arbitration provision that provides "any and all disputes," including "any dispute, claim or controversy" regarding "any aspect" of Plaintiff's relationship with Blink, will be resolved exclusively and finally by binding arbitration" on an individual basis ("Arbitration Agreement") (emphasis added).  This Circuit routinely finds that this type of digital agreement provides reasonable notice to users, and vests broad language such as that which is wielded in the Arbitration Agreement with a presumption of arbitrability.  Because Plaintiff's claims fall squarely within the accommodating parameters of the Arbitration Agreement, he should be required to arbitrate his claims.

Plaintiff's clear and unambiguously communicated obligation to arbitrate individually aside, the Amended Complaint should be dismissed with prejudice because its claims do not pass muster under Fed. R. Civ. P. 12(b)(1) and (b)(6).

Plaintiff's claim for violation of New York General Business Law ("GBL") § 349 on behalf of himself and the putative New York subclass fails on dual fronts.  First, he fails to allege that Blink misrepresented its services or any term of its membership agreement before Plaintiff and the putative subclass became Blink members. Plaintiff also fails to allege that he or putative subclass members have suffered actionable GBL § 349 injury, and undermines any such claim by acknowledging that Blink will offer a credit for March 2020 fees paid by monthly, continuing Blink members once mandatory closure orders are lifted.

The breach of contract claim must be dismissed because unanticipated and unprecedented government-ordered closures of Blink's gyms in March 2020 rendered performance by Blink under its membership agreements with Plaintiff and the putative class members impossible and, thus, discharged those duties. Moreover, Plaintiff's failure to allege that he is entitled to a refund of the ordered March 2020 closure period, or that he even requested one, especially where Blink has provided (for putative class members whose states have allowed gyms to reopen) or will offer (in the case of putative class members whose states have not lifted mandatory closure orders) a credit for March 2020 fees paid by continuing Blink members further dooms this claim.

Plaintiff's claims for unjust enrichment (which is not an available cause of action in Texas), conversion and money had and received universally fail because they are duplicative of Plaintiff's breach of contract claim. Plaintiff's failure to allege that he or any other current Blink member residing in the impacted jurisdictions requested and were refused a refund of membership fees paid for the mandatory March 2020 closure period provides a further basis for dismissing his fatally flawed conversion claim.

Plaintiff's request for punitive damages, which are generally disfavored in all implicated jurisdictions, is also fatally flawed.  Not only are these damages unavailable for breach of contract claims; the Amended Complaint fails to demonstrate that the alleged conduct forming the basis of Plaintiff's tort and consumer deception claims was of the egregious, malicious, reprehensible, quasi-criminal or morally culpable sort required to support such an extreme remedy.

In addition to the foregoing pleading failures, putative Florida, Illinois, Michigan and Texas class members may not recover on any theory of liability asserted in the Amended Complaint because their membership agreements waive and release all claims.

Finally, the Amended Complaint fails to demonstrate a basis for granting injunctive relief, especially in the absence of any motion by Plaintiff for such an extraordinary remedy, in the absence of a threat of future or continuing harm.  Because Plaintiff relief relies solely on past injury to support this threadbare request for relief, he lacks standing to assert this claim.

For these reasons, as described in more detail herein, Blink respectfully request that the Court order Plaintiff to arbitrate his individual claims or, alternatively, dismiss the Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

## II.   FACTUAL ALLEGATIONS AND BACKGROUND

### A.   Blink's Mission

Blink is a high value, low cost gym system with more than 100 locations in 10 states, each dedicated to Blink's mission of bringing the benefits of exercise to as many people as possible, particularly in traditionally underserved communities.  Blink places special emphasis on promoting mood over muscle and is committed to providing a motivating space for members. Blink takes pride in challenging fitness industry norms and celebrating and welcoming every unique body.

### B.   Allegations In The Amended Complaint

Plaintiff has been a member of one of Blink's New York City locations since January 2020.  Dkt. 17, Amended Complaint ("Compl.") at ¶ 8.  The Amended Complaint challenges Blink's mid-March temporary gym closures pursuant to mandatory closure orders issued in California, Florida, Illinois, New York, New Jersey, Michigan, Massachusetts, Pennsylvania, Texas and Virginia in response to the unanticipated and unprecedented COVID-19 pandemic. *Id*. at ¶¶ 1, 4, 8, 13, 26, 32, 37, 44, 48.  Plaintiff, who was charged membership fees on March 1,

2020[1], alleges that Blink notified him on March 16th that his membership would be frozen "going forward," but that Blink charged him for the full month of March, and then ceased to provide him with access to his Blink gym from March 16 through March 31.  *Id.* at ¶¶ 4, 6, 8.  Plaintiff does not allege that he, or any putative class member, requested a refund of March 2020 membership fees or that he, or any putative class member, sought to cancel his or their membership(s).  Rather, he believes he should have received a prorated refund for the March closure period without taking any action. *Id.*  Plaintiff does concede that Blink is offering a credit to members who paid monthly membership fees equal to the value of the number of days they were unable to use Blink gyms in March 2020 (*i.e.* the only month members have been charged membership fees during the COVID shutdown), but complains that this remedy is insufficient. *Id.*

  C. <u>Plaintiff's Assent To Blink's Terms of Use</u>

  Plaintiff signed up for a Blink membership agreement through a kiosk at one of Blink's New York City locations on January 6, 2020.  *Id.* at ¶ 16; *see also* Declaration of Sean Cosier dated July 23, 2020 ("Cosier Decl.") at ¶ 23.  In order to complete his membership registration, he was required to indicate his assent to Blink's 2020 Terms of Use and Privacy Policy by clicking a circle on the kiosk registration page indicating "I have read and agree to the terms & conditions, privacy policy and terms of use" ("Kiosk Assent Circle").  *See* Cosier Decl. at ¶ 6. To the immediate left of the Kiosk Assent Circle is a black, bolded hyperlink to the Terms and Conditions and Privacy Policy, offset on an uncluttered white background, which, when clicked, redirects users to another page that provides tabs showing the full Terms of Use and Privacy Policy ("Kiosk Hyperlink").  *Id.* at ¶¶ 8, 10.  When clicked, the Kiosk Hyperlink redirects to

---

[1] *See* dkt. 21-1, Plaintiff's Membership Agreement, at p. 1.

another page that provides tabs allowing access to the full Terms of Use and Privacy Policy. *Id*. at ¶ 9.  Plaintiff could not have advanced beyond the membership registration page or enter into his membership agreement without indicating his assent to the Terms of Use and Privacy Policy by clicking the Kiosk Assent Circle.  *Id*. at ¶¶ 11-12.

Plaintiff also assented to Blink's Terms of Use and Privacy Policy on January 7, 2020 when he downloaded and installed Blink's mobile fitness application, which provides a check-in barcode feature as well as access to Blink's virtual services, including but not limited to audio and video coaching, recipes, articles and guided meditations ("Blink Fitness App").  *Id*. at ¶¶14, 24. When Plaintiff first launched the Blink Fitness App, he was presented with a default registration screen that contains underlined white hyperlinks to Blink's Terms of Use and Privacy Policy, which are set in contrast to a bright blue background. *Id*. at ¶¶ 17-18.  Before gaining access to Blink Fitness App content, Plaintiff was required to indicate his assent to the Terms of Use and Privacy Policy by clicking a box that indicates "Yes, I agree to the terms of use and privacy policy." *Id*. at ¶ 19.  In other words, Plaintiff could not have registered to use the Blink Fitness App without manifesting his assent to the Terms of Use and Privacy Policy. *Id*. at ¶¶ 20-21.  Plaintiff's membership agreement does not revoke his assent to the Arbitration Agreement. Dkt. 21-1, Membership Agreement.

D.    The Arbitration Agreement

Blink's Terms of Use contain the following Arbitration Agreement:

WE AND YOU EACH AGREE THAT, ANY AND ALL DISPUTES (AS, AND TO THE EXTENT, DEFINED BELOW), WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT BY A JUDGE OR JURY…

Dkt. 14, 2020, Terms of Use, at p. 8.  The Arbitration Agreement provides that "any and all disputes" - defined as "any dispute, claim or controversy between you and [Blink] regarding any

aspect of your relationship with [Blink]" – "will be resolved exclusively and finally by binding arbitration" on an individual basis. *Id.* at pp. 7, 9 (emphasis added).

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P 12(b)(1)

To survive a Rule 12(b)(1)  motion, a plaintiff must demonstrate standing. U.S. Const. art. III, § 2, cl. 1; *Amidax Trading. Grp. v. S.W.IF.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Styling a complaint as a class action does not dispense this requirement. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Standing requires a showing of an "injury in fact," a sufficient "causal connection between the injury and the conduct complained of," and a "likelihood' that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992)). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing that he has suffered a concrete injury or is on the verge of suffering one." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006).

### B.    Fed. R. Civ. P. 12(b)(6)

"[A] complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  On a Rule 12(b)(6) motion, the court is required to assess the "legal feasibility of the Complaint" and "must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor." *Friedman v. Maspeth Fed. Loan & Say. Ass'n.*, 13-CV-6295, 2014 WL 3473407, at *2 (E.D.N.Y. July 14, 2014); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).  Although the Court must consider all of the factual allegations of the

complaint as true, the Court is not bound to accept a legal conclusion couched as a factual assertion, nor should the Court accept "unwarranted deductions," "rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." *Iqbal*, 556 U.S. at 663-6.

## IV.   THE AMENDED COMPLAINT REQUIRES DISMISSAL

### A.   Plaintiff Agreed to Arbitrate His Claims Individually

The FAA "reflects a liberal federal policy" in favor of arbitration and "requires courts to rigorously enforce arbitration agreements according to their terms[2]," including those that require litigation of claims on an individual basis.   9 U.S.C. § 4; *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 73 (2d Cir. 2017); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The overarching purpose of the FAA ... is to ensure the enforcement of agreements according to their terms."); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 223 (2013) ("the [FAA] seems to protect pretty absolutely," a party's "intention to use individualized rather than class or collective action procedures."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (questions of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

For the reasons set out below, Blink respectfully submits that the Court should find that Arbitration Agreement is valid and that Plaintiff's dispute falls within its scope. *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).

---

[2] A summary judgment-like standard is applied to motions to compel arbitration. *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016).

i.    *The Arbitration Agreement Is Valid*

When deciding whether parties agreed to arbitrate, courts generally "should apply ordinary state-law principles that govern the formation of contracts." *Rightnour v. Tiffany & Co.,* 239 F. Supp. 3d 744, 749-50 (S.D.N.Y. 2017). Internet commerce "has not fundamentally changed the principles of contract." *Register.com v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Applying ordinary contract law principles, the Second Circuit has made it clear that "an electronic click can suffice to signify the acceptance of a contract ... as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). Clickwrap[3] agreements like Blink's Terms of Use and Privacy Policy, where the user clicks a button to affirmatively accept terms and conditions before he or she is allowed to proceed with further utilization of the website or application, are upheld in this Circuit "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree'." *Id; Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837-840 (S.D.N.Y. 2012) (Finding Facebook's hyperlinked terms and conditions had been "reasonably communicated" where a consumer must take further action, to assent to and view the terms); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263 (C.D. Cal. 2008) (upholding arbitration clause contained in terms accessible via a hyperlink next to an assent button on a registration page); *Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. Ct. App. 2009) (reaching a similar conclusion); *Lemley*, Terms of Use, 91 Minn. L. Rev. 459, 466 (2006)

---

[3] "Clickwrap agreements require a user to affirmatively click a box …acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Fteja*, 841 F. Supp. 2d at 837.

("Because the user has 'signed' the contract by clicking 'I agree,'" commentators find "nothing inherently troubling about enforcing clickwrap licenses.").

To be bound by an arbitration agreement contained in a clickwrap agreement, the user must have "reasonable notice of the arbitration provision." *Feld v. Postmates, Inc.*, -- F. Supp. 3d --, 2020 U.S. Dist. LEXIS 37686, at *3 (S.D.N.Y. Mar. 3, 2020).  Here, it is undisputed that Plaintiff had notice of the Arbitration Agreement contained in the Terms of Use both when he registered for his membership at a Blink kiosk and when he logged into the Blink Fitness App. When he signed up for his membership agreement at a Blink kiosk and when he installed the Blink Fitness App on his phone, Plaintiff was required to indicate his assent to the Terms of Use (and by extension, the Arbitration Agreement contained therein) by affirmatively clicking a box or a circle confirming that he intended to be bound by the terms therein.  Hyperlinks with eye-catching fonts, offset from an uncluttered backgrounds, and positioned directly adjacent to the assent box/circle unequivocally put Plaintiff on notice of the existence of the Arbitration Agreement. *Meyer* at 77-78 ("a reasonably prudent smartphone user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found."); *Fteja,* 841 F.Supp.2d at 837-840.

Applying the Second Circuit standard set forth herein, the Arbitration Agreement contained in the Terms of Use, which governs "any dispute, claim or controversy between [Plaintiff] and [Blink] regarding any aspect of [Plaintiff's] relationship with [Blink]," is valid. Dkt. 14, 2020 Terms of Use, at p. 7, 9 (emphasis added).  Moreover, the Terms of Use and Plaintiff's membership agreement are properly read as one contract because Plaintiff assented to them simultaneously and, thus, they are "part of a single transaction intended to effectuate the same purpose."  *Fernandez v. City of N.Y.*, 502 F. App'x 48, 54 (2d Cir. 2012); *TVT Records v.*

*Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005); *Euro Pac. Capital Inc. v. Bohai Pharms. Grp., Inc.*, 2016 U.S. Dist. LEXIS 8335, at *20 (S.D.N.Y. 2016) ("Where there are multiple contracts … claims founded upon one agreement may still ... relate … such that the latter agreement's arbitration clause compels arbitration").  As evidenced by Blink's requirement that members assent to the Terms of Use in order to both buy a membership and use its gyms and to access the Blink Fitness App content, they are mutually dependent and serve the same purpose and are thus integrated.  *Arciniaga v. GMC*, 460 F.3d 231, 237 (2d Cir. 2006); *Commander Oil Corp. v. Advance Food Service Equipment*, 991 F.2d 49, 53 (2d Cir. 1993) (holding that two contracts were integrated because they "were component parts of a single business transaction").  As such, Plaintiff should be compelled to arbitrate his claims on an individual basis.

ii.   *The Arbitration Agreement Encompasses Plaintiff's Claims*

This dispute is unquestionably within the scope of the Arbitration Agreement.  Federal policy in favor of arbitration "requires that any doubts concerning the scope of arbitrable[4] issues be resolved in favor of arbitration." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009).  The Second Circuit prescribes a multi-step inquiry to determine whether a dispute falls within the scope of an arbitration agreement that begins with classifying the agreement as either broad or narrow.  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).  If the agreement is found to be narrow, the court then determines whether the issue is within the purview of or collateral to the clause.  *Id*.  If, on the other hand, the arbitration clause is determined to be broad, a presumption of arbitrability exists and "arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of a contract construction or the parties' rights and obligations under it.'" *Serebryakov v. Golden*

---

[4] Issues of arbitrability are generally "for judicial determination." *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1031 (2d Cir. 2010).

*Touch Transp. of NY, Inc.,* 12-CV-3990, 2015 U.S. Dist. LEXIS 36667, at *14 (E.D.N.Y. Mar. 23, 2015).

The Arbitration Agreement applies to "all disputes" without exception, which is defined to include "any dispute, claim or controversy between you and [Blink] regarding any aspect of your relationship with [Blink].  *See* Dkt. 14, 2020 Terms of Use, at pp. 7, 9 (emphasis added).  This "very expansive language … suggest[s] a broad arbitration clause," and thus a presumption of liability applies.  *Louis Dreyfus,* 252 F.3d at 225; *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 71 (2d Cir. 1997) (finding an arbitration clause broad that gave arbitrator "the power to decide all differences … as to interpretation, application or performance of any part of this agreement."); *Serebryakov v. Golden Touch Transp. of NY, Inc.*, 2015 U.S. Dist. LEXIS 36667, at *17 (E.D.N.Y. Mar. 23, 2015) (finding "obviously broad" "any claim or controversy" language in arbitration clause to "justify a strong presumption of arbitrability"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 406 (1967) (provision requiring arbitration of "[a]ny controversy or claim" was "easily broad enough"); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (clause requiring arbitration for "[a]ny and all differences and disputes of whatsoever nature" was "at least as expansive as the language … that this Court has characterized as broad"); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) (clause requiring arbitration for "any controversy, claim or dispute" is "of the broad type"); *Oldroyd v. Elmira Sav. Bank*,134 F.3d 72, 76-77 (2d Cir. 1998) (characterizing clause making arbitrable "[a]ny dispute, controversy or claim" as a "prototypical broad arbitration provision"); *Collins*, 58 F.3d at 20 ("The clause … "[a]ny claim or controversy," is the paradigm of a broad clause."); *Vera v. Saks & Co*., 335 F.3d

11

109, 117 (2d Cir. 2003) (language requiring arbitration of "[a]ny dispute, claim, grievance or difference" constitutes a broad clause); *Reid v. Supershuttle Inc.*, 08-cv-4854, 2010 U.S. Dist. LEXIS 26831, at *5 (E.D.N.Y. Mar. 22, 2010) (broadly construing arbitration clause governing "any controversy").

 In light of the validity of the Arbitration Agreement and the presumption of arbitrability inherent in the broadness of its terms, the Court should compel Plaintiff to arbitrate his claims on an individual basis.

 B. <u>The Amended Complaint Fails As A Matter Of Law</u>

 The Court should alternatively dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) because the individual and class claims fail as a matter of law.

  i. *The Amended Complaint Alleges No Actionable Consumer Deception*

 Plaintiff's GBL § 349 claim fails to allege that Blink engaged in deceptive practices when Plaintiff and the New York subclass entered into their membership agreements, or that Blink caused Plaintiff and the putative subclass members to suffer an actual injury. "An actual injury claim under Section 349 typically requires a plaintiff to allege that, <u>on account of a materially misleading practice</u>, she purchased a product and did not receive the full value of her purchase." *Izquierdo v. Mondelez Int'l, Inc.*, 2016 U.S. Dist. LEXIS 149795, at *7 (S.D.N.Y. Oct. 26, 2016) (emphasis added); *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 452, 452 (N.Y. 2012). This prong may only be satisfied by an allegation of overpayment based on inaccurate representations. *Ackerman v. Coca-Cola Co.,* 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010).

 Plaintiff has identified no "materially misleading practice" in force and effect <u>when he entered into his gym membership</u> in January 2020, before the unanticipated and unprecedented COVID-19 pandemic swept the nation, and he certainly has not alleged that he overpaid for his Blink membership when he entered into his agreement because of any allegedly inaccurate

representation.  Weeks before Blink was ordered in mid-March to temporarily close its gyms for the safety and welfare of its members and employees, Blink had already charged monthly membership fees for March pursuant to the terms of their membership agreements.  *See, e.g.* dkt. 21-1, Membership Agreement.  Plaintiff fails to allege that Blink had even an inkling of what was to come in just two short weeks.  Because the Amended Complaint is devoid of any allegation suggesting that Blink did not intend to provide full access to its gyms when it entered into membership agreements or when it charged March membership fees, let alone that Blink could have foreseen or anticipated it would be forced to temporarily close its gyms in mid-March, Plaintiff has failed to allege a GBL § 349 claim.

This claim is further hobbled by Plaintiff's concession that Blink has provided or will offer an adequate remedy to Plaintiff and putative class members. *Kommer v. Ford Motor Co.*, 1:17-cv-296, 2017 U.S. Dist. LEXIS 118335, at *12 (N.D.N.Y. July 28, 2017) ("[I]f the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury."); Dkt. 17, Compl., at ¶ 4.  Members of Blink gyms that have reopened have already been offered a credit equal in value to the fifteen days they paid for when March 2020 services were not available. *See* Declaration of Peter G. Siachos dated July 23, 2020 ("Siachos Decl."), **Exhibit A**.  Once all impacted states allow gyms to reopen, Plaintiff and all remaining active putative class members will be offered a credit for the March 2020 COVID-19 closure period.  *Id.*  There is simply no support for Plaintiff's position that he, as a current member, is entitled to a prorated refund for the March 2020 closure period, especially where he fails to allege that he requested one.  *See generally* dkt. 17, Compl.  Because Plaintiff has no contractual or statutory right to continue his relationship with Blink and also request a prorated refund of the March 2020 closure period, especially because Blink has communicated an intent to provide an adequate remedy in

the form of a credit when Blink is allowed to re-open its New York locations, he cannot

demonstrate that he has suffered actionable GBL § 349 damages.

Plaintiff's inability to identify a cognizable injury and wrongful conduct on the part of

Blink are fatal to his GBL § 349 claim.  It must be dismissed.

> ii.   *Mandatory COVID-19 Closures Rendered Performance of the Membership Agreements Impossible*

Mandatory COVID-19 closure orders in the impacted states rendered Blink's ability to

provide access[5] to its gyms in March 2020 and beyond temporarily impossible.  Thus, Blink's

"duties to render performance are discharged."  Restatement (Second) of Contracts § 265 (1981);

*Sage Realty Corp. v. Jugobanka, D.D.*, 1997 U.S. Dist. LEXIS 9301, at *1-2 (S.D.N.Y. 1997);

*U.S. v. Gen. MacArthur Senior Vill.*, 508 F.2d 377, 381 (2d Cir. 1974).  The relevant inquiry is

"whether the party seeking to avoid liability could have anticipated the frustrating event and

guarded against it" and whether the contracting parties could have provided for the frustrating

event through commercial safeguards.  *Sage Realty Corp., D.D.*, 1997 U.S. Dist. LEXIS 9301, at

*4, n. 4; *Beardslee v. Inflection Energy, LLC*, 2012 WL 5522912, at *6-7 (N.D.N.Y. 2012).  The

Amended Complaint alleges a textbook case of impossibility.  *See* dkt. 17, Compl., at ¶ 1

(alleging that the "novel coronavirus, COVID-19, rages throughout the world and the United

States economy has gone into a deep recession").  Because the COVID-19 pandemic was as

unpredictable as it was unprecedented, and was certainly not a contemplated contingency by

---

[5] The mandatory closure orders did not prevent Plaintiff or the putative class members from accessing <u>all</u> of Blink's services.  Throughout the temporary shutdown, every Blink member has access to, among other things, workout videos, articles, and guided meditations on the Blink Fitness App.  *See* Cosier Decl. at ¶¶ 15-16.  In fact, Plaintiff has accessed the Blink Fitness App numerous times since the closure of his Blink gym.  *Id.* at ¶ 26.

Blink or Plaintiff when Plaintiff entered into his membership agreement, Blink should be relieved of its obligation under its agreements while mandatory closure orders are in place.

Moreover, Blink is not contractually obligated to provide a refund for the March closure period to Plaintiff. *See, e.g.* dkt. 21-1, Membership Agreement. Even if that were the case, Plaintiff has failed to allege that he or any other putative class member with a continuing agreement requested a refund from Blink. *See, e.g.*, dkt. 17, Compl.  In any event, Blink has offered an adequate remedy (*i.e.* membership credit equal in value to the number of days members paying monthly dues paid for in March 2020, but were unable to use Blink gyms due to mandatory closure orders) to all putative class members in implicated jurisdictions in which mandatory closure orders have been lifted.  *See* Siachos Decl., Ex. A.  When New York, New Jersey and Michigan gyms are allowed to re-open, Blink will offer credits to affected active members in those states.  *Id.*  Because there is no legal authority supporting Plaintiff's request for damages in addition to remedies already offered by Blink that will make him and the putative class whole, and Blink is not required by statute or by contract to provide retroactive refunds to Plaintiff as a continuing member, the breach of contract claim should be dismissed on this additional basis.

      iii.   *Plaintiff's Unjust Enrichment and Money Had And Received Claims Are Impermissibly Duplicative*

Plaintiff's restitution[6] claims must be dismissed because they are duplicative of his breach of contract claim.  *Compare* dkt. 17, Compl., at ¶ 26 (unjust enrichment claim alleging Plaintiff paid fees for "entirety of March 2020 despite gyms being closed for half the month") and ¶ 33 (money had and received claim alleging that Blink "retained all of the membership fees

---

[6] Unjust enrichment and money had and received are claims for restitution premised on the principles of equity. *Banque Worms v. BankAmerica Int'l.*, 77 N.Y.2d 362, 366 (1991).

for March 2020 while closing its gyms for half the month") *with id.* at ¶ 44 (breach of contract claim alleging Blink breached agreements "by charging … for the full month of March 2020 despite closing its gyms for the latter half of the month.").  Under the laws of the implicated states (with the exception of Texas, which does not recognize unjust enrichment/money had and received claims[7]), unjust enrichment and money had and received[8] claims are untenable in the face of an express contract.  *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 559 (W.D.N.Y. 2018); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs.*, 565 F.3d 1293, 1301 (11th Cir. 2009); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *Philibotte v. Nisource Corp. Servs. Co.*, 793 F.3d 159, 167 (1st Cir. 2015); *In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 634 (E.D. Mich. 2019); *Staff4Jobs, LLC v. List Logistics, LLC*, 3:18-cv-13399, 2019 U.S. Dist. LEXIS 107443, at *18 (D.N.J. June 27, 2019); *Martin v. Snap-Tite, Inc.*, 641 F. App'x 126, 130 (3d Cir. 2016); *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D. Va. 2013).  Because Blink's membership agreements govern the allegations supporting Plaintiff's equitable restitution claims, Counts I and II must be dismissed.

      iv.   *Plaintiff's Conversion Claim Is Fatally Duplicative And Lacks a Prima Facie Element*

Plaintiff's conversion claim fails on dual fronts.  First, it is duplicative of his breach of contract claim[9], which dooms this claim from the start. *Compare* dkt. 17, Compl., at ¶ 37

---

[7] *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009).

[8] *Levin v. Gallery 63 Antiques Corp.*, 2006 WL 2802008, at * 19 (S.D.N.Y. Sept. 26, 2006) (Claims for money had and received and unjust enrichment are both "quasi-contract claims" that are "not viable where …it is undisputed that the parties entered into an express agreement").

[9] Plaintiff's membership agreement, which authorizes Blink to charge fees at the beginning of the month, directly contradicts his assertion that he and the putative class were charged "while" gyms were closed.  Dkt. 17, Compl., at ¶¶ 37-38; Dkt. 21-1, Membership Agreement, at p. 1.  If Blink failed to perform, the remedy lies in a claim for breach of contract, not conversion.

(conversion claim alleging Blink charged "monthly membership fees while gyms were closed[10]")
*with id.* at ¶ 44 (breach of contract claim alleging Blink breached agreements "by charging … for
the full month of March 2020 despite closing its gyms for the latter half of the month."); *Usov v.
Lazar*, 2013 U.S. Dist. LEXIS 89257, at *22 (S.D.N.Y. June 18, 2013); *N. Hous. Int'l, L.L.C. v.
PW Real Estate Invs., Inc.*, 2003 Tex. App. LEXIS 9185, at *23 (Tex. App. Oct. 30, 2003).
Moreover, because the damages Plaintiff seeks in connection with his breach of contract and
conversion claims are identical, he will be fully compensated by one. Accordingly, the
conversion claim is duplicative. *AD Rendon Communs., Inc. v. Lumina Ams., Inc.*, 2006 U.S.
Dist. LEXIS 37600, at *15-16 (S.D.N.Y. June 7, 2006) ("Where no additional damages would be
awarded for prevailing on the conversion claim, it cannot be distinct from the breach of contract
claim."); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (App. Div. 1982)
("[A]n action for conversion cannot be validly maintained where damages are merely being
sought for breach of contract.")

Plaintiff's conversion claim is further flawed because he fails to allege that he requested a
refund of the March temporary closure period fees or that Blink refused to provide a refund, a
bedrock requirement under the laws of the implicated jurisdictions where the allegedly converted
goods are obtained lawfully[11]. *Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed. Appx. 179, 180 (2d
Cir.2010) ("Where the original possession is lawful, conversion does not occur until the
defendant refuses to return the property after demand or until he sooner disposes of the

---

[10] This allegation is untrue. Prior to the COVID-19 shutdown, Plaintiff's monthly fees were
charged at the beginning of each month. *Id.*
[11] Plaintiff's monthly fees were obtained lawfully at the beginning of March pursuant to the
terms of his membership agreement. *Id.* (authorizing his bank to "make [his] Blink monthly
payment … and to post it to [his] account" "on the 1st day of each month beginning February
2020" and that "[t]he monthly dues will continue to be deducted each month").

property."); *Tulepan v. Roberts*, 2015 U.S. Dist. LEXIS 5488, at *10 (S.D. Fla. Jan. 16, 2015);

*Lewis v. Nat'l City Bank*, 814 F. Supp. 696, 699 (N.D. Ill. 1993); *Cafaro v. HMC*, 2008 U.S.

Dist. LEXIS 71724, at *16 (D.N.J. Sep. 5, 2008); *Head v. Phillips Camper Sales & Rental, Inc.*,

234 Mich.App. 94, 111-112 (1999); *Felchak v. JP Morgan Chase Bank, N.A.*, 2013 U.S. Dist.

LEXIS 66805, at * 3 (S.D. Tex. May 10, 2013); 90 C.J.S. Trover and Conversion § 1. Plaintiff's

failure to allege a *prima facie* element of his conversion claim warrants dismissal at this stage.

<blockquote>v.   <em>There Is No Basis For Punitive Damages</em></blockquote>

Punitive damages are generally disfavored, and are specifically unavailable in breach of

contract actions under the laws of New York and the other implicated states.  C.C.C. § 3294;

*Ferguson Transp. v. N. Am. Van Lines*, 687 So. 2d 821, 822 (Fla. 1996); *Extra Equipamentos E

Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 724 (7th Cir. 2008);  *Kersey v. Peoples' United

Bank, N.A.*, 2017 U.S. Dist. LEXIS 220119, at *9 (D. Mass. Nov. 7, 2017); *Martiny v. Introcaso-

Allison*, 2019 U.S. Dist. LEXIS 162694, at *11 (S.D.N.Y. Sep. 23, 2019); *Unifoil Corp. v.

Cheque Printers & Encoders*, 622 F. Supp. 268 (D.N.J. 1985); *Nicholas v. Penn. State,* 227 F.3d

133, 147 (3d Cir. 2000); *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986); *Kamlar

Corp. v. Haley,* 224 Va. 699, 707 (1983); *Gilroy v Conway*, 151 Mich. App 628, 631 (1986).

Likewise, Plaintiff cannot recover punitive damages for his tort or consumer deception

claims because he fails to plead that Blink's alleged conduct is sufficiently egregious.  *State

Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("[T]he most important

indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of

the defendant's conduct.").  In New York, punitive damages are only recoverable if the tortious

act "is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the

defendant but to deter him … from indulging in similar conduct in the future."[12]  *Walker v. Sheldon*, 10 N.Y.2d 401 (1961); *Virgilio v. City of N.Y.*, 407 F.3d 105, 116 (2d Cir. 2005) ("Punitive damages are invoked to punish egregious, reprehensible behavior," as opposed to recompense for injury); *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 54 (2d Dep't 1990) ("punitive damages must be based on quasi criminal conduct or of such utterly reckless behavior or a demonstrated malicious intent to injure … or gross, wanton or willful fraud or other morally culpable conduct.").

Plaintiff fails to allege that in following mandatory COVID-19 closure orders, Blink acted with the requisite malice, moral depravity, recklessness or quasi-criminal reprehensibility to support an award of punitive damages.  *Id*. Indeed, it is telling that Plaintiff voluntarily abandoned his fraud and negligent misrepresentation claims.  *See* Dkt. 15, Plaintiff's Letter Opposing Blink's Request For Leave to Move to Compel Arbitration or Dismiss, at p. 3.  Rather, Plaintiff asserts only that Blink charged him for the full month of March but failed to refund the portion of those charges corresponding with the period in which Blink was ordered to temporarily close its gyms in the interest of public health and safety – a claim that is in any event unsupported by statute, contract or fact.  *See* Dkt. 17, Compl., at ¶¶ 32, 37, 44.  Because the Amended Complaint is devoid of any allegation evidencing an aggravated nature of Plaintiff's tort-based claims, Plaintiff must be precluded from seeking this extreme remedy.

### vi.    *Florida, Illinois, Michigan and Texas Members Waived Their Claims*

Myriad individualized differences plaguing the claims of the putative class members supports dismissal of the Amended Complaint at this stage.  Plaintiff fails to allege that the terms

---

[12] The same is true in other impacted jurisdictions. *See, e.g.,* Fla. Stat. § 768.72; *Dee v. Borough of Dunmore*, 474 F. App'x 85, 89 (3d Cir. 2012); *Mitri v. Walgreen Co.*, 660 F. App'x 528, 530 (9th Cir. 2016).

of the putative class member membership agreements are consistent across all implicated

jurisdictions, or even over the relevant class time period.  For example, Florida, Illinois,

Michigan and Texas membership agreements contain waivers and releases in favor of Blink

precluding those putative class members' claims:

> In consideration of the membership privileges provided to you … you hereby voluntarily
> and knowingly, forever waive, release, covenant not to sue, discharge and hold harmless
> Blink … from, and [Blink] will not be liable to you or any other person for, any losses or
> damages, whether direct, indirect, incidental, consequential, special, punitive, or
> exemplary … arising out of, or in connection with or related to this agreement, your
> membership, **the use or non-use of any service, product or equipment … whether
> related to exercise or not**  … arising in or by statute, tort, contract, strict liability, breach
> of warranty or otherwise…

*See* Siachos Decl. at **Exhibit B** (emphasis added).  Because these class members unequivocally

waived all of the claims in the Amended Complaint, these class claims are properly dismissed.

### vii.   *Plaintiff Fails To Allege A Basis For Injunctive Relief*

"[A]n injunction is an extraordinary remedy which ordinarily should not be granted

where a plaintiff has not proven a probability or threat of continuing" unlawful conduct.  *Dolori*

*Fabrics, Inc. v. The Limited, Inc.*, 662 F. Supp. 1347, 1358 (S.D.N.Y. 1987).  Plaintiff fails to

allege that Blink's alleged deceptive practices are likely to cause continuing harm, a bedrock

requirement for injunctive relief.  To survive this motion, Plaintiff was required to allege "the

likelihood of future or continuing harm."  *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir.

2012); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (a party seeking injunctive relief

"cannot rely on past injury").  Past injuries "do not confer standing to seek injunctive relief

unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar

way."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Tomasino, v. Estee*

*Lauder Co. Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[P]ast exposure to illegal conduct

does not in itself show a present case or controversy regarding injunctive relief").

Plaintiff filed the Amended Complaint over two months after he initiated this matter, yet he cannot allege that Blink continued to charge monthly membership fees extends beyond March. *See* Dkt. 17, Compl., at ¶¶ 5 ("Defendant is charging customers the price for all of March 2020 while denying customers access … for half of March"), 28 (substantially similar allegations), 33 (same), 44 (same), 48 (same).  Moreover, Plaintiff alleges that he would not pay for Blink's services as long as New York's COVID-19 shutdown orders remain in place.  *Id*. at ¶ 9 ("Plaintiff would not have paid for the membership … had he known that he would not have access to any of Defendant's gyms").  Because Plaintiff has failed to plead that he or the putative class members are exposed to an immediate threat of recurring injury (nor could he, as Blink froze all member accounts during the shutdown period – *see* dkt. 17, Compl., at ¶ 4), his barely-plead injunctive relief claim must be dismissed.

## CONCLUSION

For the reasons set forth herein, Blink respectfully requests that the Court enter an order compelling Plaintiff to arbitrate his claims on an individual basis or, alternatively, dismissing the Amended Complaint with prejudice.

Dated: July 23, 2020

GORDON REES SCULLY MANSUKHANI LLP
*Counsel for Defendant Blink Holdings, Inc.*


By:   ___*/s/ Peter G. Siachos*_____
        Peter G. Siachos
        JoAnna M. Doherty

1 Battery Park Plaza, 28th Floor
New York, NY 10004
T: (973) 549-2532
E: psiachos@gordonrees.com