UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON JAMPOL, *individually and on behalf of all others similarly situated*,<br><br>                              Plaintiff,<br><br>                   -v.-<br><br>BLINK HOLDINGS, INC.,<br><br>                              Defendant. | 20 Civ. 2760 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Brandon Jampol brings this proposed class action against Defendant Blink Holdings, Inc. ("Blink"), a company that operates gyms under the "Blink Fitness" moniker, alleging that Defendant improperly charged Blink gym members a full monthly membership fee for the month of March 2020 despite closing its gyms for roughly half the month due to the COVID-19 pandemic. Plaintiff seeks redress for himself and the members of the proposed class in the form of recovery of fees paid for the time Defendant's gyms were closed, among other claims for relief. Defendant argues that these claims are governed by Blink Fitness's Terms of Use, which contains a broad arbitration provision. Defendant now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to compel arbitration of Plaintiff's claims and to stay this case pending the outcome of that arbitration, or in the alternative, to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff opposes the motion, arguing his claims are not covered by the Terms of Use. For the reasons set forth in the remainder of this Opinion,

Defendant's motion to compel arbitration is granted and the instant action is stayed.

## BACKGROUND[1]

### A.  Factual Background

#### 1.  The Parties

Defendant is a Delaware corporation with its principal place of business in New York.  (Compl. ¶ 9).  Defendant operates more than 100 gyms across the United States, including in California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, Texas, and Virginia.  (*Id.* at ¶¶ 2, 4, 9).

Plaintiff, a resident of New York, has been a member of Defendant's Blink Fitness gyms since January 6, 2020, when he signed up for a month-to-month membership at Defendant's Penn Station facility in Manhattan.  (Compl. ¶ 8; Cosier Decl. ¶ 23; *see also* Membership Agreement).  In the process of signing up for his gym membership, Plaintiff reviewed and assented to the Terms of Use while using a digital self-service kiosk at the Penn Station facility.  (Cosier Decl. ¶ 23).  Shortly thereafter, Plaintiff also reviewed and digitally signed the

---

[1]  A The facts in this Opinion are drawn primarily from Plaintiff's Amended Complaint ("Amended Complaint" or "Compl." (Dkt. #17)), which is the operative pleading in this case.  Facts are also drawn from the Declaration of Peter G. Siachos in Support of Defendant's Motion to Compel Arbitration ("Siachos Decl." (Dkt. #29)); the Declaration of Sean Cosier in Support of Defendant's Motion to Compel Arbitration ("Cosier Decl." (Dkt. #30)); and the Declaration of Andrew J. Obergfell in Opposition to Defendant's Motion to Compel Arbitration ("Obergfell Decl." (Dkt. #33)).

For convenience, the Court refers to Defendant's Memorandum of Law in Support of Its Motion to Compel Arbitration as "Def. Br." (Dkt. #28); Plaintiff's Memorandum of Law in Opposition to the Motion as "Pl. Opp." (Dkt. #32); and Defendant's Reply Memorandum of Law in Support of Its Motion as "Def. Reply" (Dkt. #38).  Plaintiff's membership agreement with Defendant is referred to as the "Membership Agreement" (Cosier Decl., Ex. A), and Blink's Terms of Use are referred to as the "Terms of Use" (Dkt. #14, Ex. A).

Membership Agreement. (Membership Agreement; *see also* Cosier Decl. ¶¶ 6-13). To maintain his Blink Fitness membership, Plaintiff agreed to pay approximately $27 per month on top of an annual fee of approximately $50. (Compl. ¶ 8; *see also* Membership Agreement).

### 2. The Relevant Agreements

There are two agreements between the parties pertinent to the instant motion. First is the Terms of Use, which Plaintiff twice reviewed and signed electronically: first, on January 6, 2020, while signing up for his Blink membership (*see* Crosier Decl. ¶ 23), and again on the following day when Plaintiff registered for the Blink Fitness app (*see id.* at ¶ 24). Second is the Membership Agreement, which Plaintiff reviewed and signed electronically while signing up for his Blink membership on January 6, 2020. (*See id.* at ¶ 23). More specifically, Plaintiff was using a Blink Fitness kiosk, a digital device, at Blink's Penn Station location when he assented to the Membership Agreement and the Terms of Use on January 6, 2020. (*See id.*). Plaintiff agreed to the Terms of Use again using the Blink Fitness mobile app. (*Id.* at ¶ 24).

The Terms of Use contain a broad arbitration provision (the "Arbitration Agreement"). It reads, in relevant part:

> By using the Services, you and Blink Fitness agree to submit any and all Disputes (as defined below) to binding arbitration pursuant to the Federal Arbitration Act (Title 9 of the United States Code), which shall govern the interpretation and enforcement of this arbitration agreement ("Arbitration Agreement").

\* \* \*

> WE AND YOU EACH AGREE THAT, **ANY AND ALL DISPUTES** (AS, AND TO THE EXTENT, DEFINED BELOW), WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT BY A JUDGE OR JURY, IN ACCORDANCE WITH THIS ARBITRATION AGREEMENT.

(Terms of Use (emphasis added)). The Arbitration Agreement also contains a class action waiver, which says in relevant part that by using Blink's "Services," users

> agree that the arbitration of any Dispute (as defined below) shall be conducted on an individual, not a class-wide or collective basis, and that no such arbitration proceedings may be consolidated with any other arbitration or other legal proceedings[.] [Users] further agree that [they], will not be a class representative, class member, or otherwise participate in a class, representative, collective, or consolidated proceeding against Blink Fitness.

(*Id.*). The Arbitration Agreement defines "Services" as:

> the Blink Fitness website … all features, functionalities, services and Content … made available through such website …, any digital platforms and devices used or made available at Blink Fitness locations (the "Digital Platforms"), the Blink Fitness [mobile] application, and any other application or software, and all features, functionalities, services and [c]ontent … made available through the foregoing … made available by [Defendant].

(*Id.*). And the Arbitration Agreement defines "Disputes" as:

> *[A]ny dispute, claim, or controversy* between you and [Defendant] *regarding any aspect of your relationship with [Defendant],* including without limitation those alleging or based in contract, statute, regulation, ordinance, tort, fraud, misrepresentation, fraudulent inducement, negligence, gross negligence or reckless behavior, or any other legal, statutory or equitable theory, and includes the validity, enforceability or scope of these Terms.

(*Id.* (emphasis added)).

The other relevant agreement is Plaintiff's Membership Agreement, which Plaintiff signed electronically on January 6, 2020, the same day he assented to the Terms of Use. (Membership Agreement). The Membership Agreement establishes, *inter alia*, the membership fees and a schedule for the payment of such fees. (*Id.*). It does not contain an arbitration agreement or forum selection clause, nor does it include any provision regarding the resolution of any disputes arising out of the Membership Agreement. (*See id.*). However, the Membership Agreement does contain a merger clause, which says, in relevant part:

> 12. ENTIRE AGREEMENT: Except for the rules, regulations and schedules posted at the Club or issued orally by Blink from time to time at its discretion, all of which are incorporated into this agreement, this contract constitutes the entire and exclusive agreement between the parties relating to the subject matter hereto and supersedes any oral or other written understanding.

(*Id.*).

All prospective gym members must agree to the Terms of Use, including the Arbitration Agreement, before they can enter into a Membership Agreement. (Cosier Decl. ¶ 5). For example, when a prospective member signs up for a membership at a digital kiosk at a Blink Fitness gym — as Plaintiff did in this case — the kiosk is designed so that the prospective member must review and agree to the Terms of Use immediately before he is permitted to enter into a Membership Agreement. (*Id.* at ¶¶ 6-12).

### 3. Blink's Response to the COVID-19 Pandemic

On March 16, 2020, due to the COVID-19 pandemic, Defendant announced that it was closing all of its gyms in California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, Texas, and Virginia. (Compl. ¶ 4). On March 16, 2020, Defendant closed Blink gyms in New York City, including the gym Plaintiff alleges that he attended. (*Id.* at ¶ 8). At the beginning of March, Defendant charged Plaintiff for his monthly membership fee by automatically deducting the monthly fee from Plaintiff's debit card. (*See id.* at ¶ 8; Membership Agreement). Although Defendant's gyms were closed for approximately half of March 2020, Plaintiff alleges that Defendant did not refund his membership dues, nor the membership dues of any member, for the portion of the month during which its gyms were closed. (Compl. ¶ 4).

After charging gym members for the full month of March, Defendant "froze" its customers' memberships, declining to charge them subsequent months during which Defendant's gyms remained closed. (Compl. ¶ 8). Defendant further announced that it would provide members a membership credit for the period in March during which Defendant's gyms were closed. (Compl. ¶ 6; Siachos Decl., Ex. A; Obergfell Decl., Ex. B). Plaintiff alleges that this announcement occurred approximately one month after Plaintiff initiated this suit, and that receiving a gym credit is insufficient relief. (Pl. Opp. 1-2).

### B. Procedural Background

Plaintiff filed the initial complaint in this action, on behalf of himself and the members of the proposed class, on April 2, 2020. (Dkt. #1). On May 19, 2020, Defendant filed a letter seeking a pre-motion conference to pursue an anticipated motion to compel arbitration, or in the alternative, to dismiss the complaint. (Dkt. #14). On May 22, 2020, Plaintiff filed a letter opposing Defendant's motion for a pre-trial conference on the grounds that he planned to file an amended complaint (Dkt. #15), and therefore the Court denied Defendant's motion for a conference without prejudice on May 26, 2020 (Dkt. #16).

Thereafter, on June 3, 2020, Plaintiff filed an amended complaint against Defendant bringing claims for unjust enrichment, money had and received, conversion, breach of contract, and violation of New York General Business Law § 349. (*See generally* Compl.). On June 17, 2020, Defendant filed a second letter seeking a pre-motion conference to pursue a motion to compel arbitration (Dkt. #19), which motion Plaintiff opposed on June 22, 2020 (Dkt. #20). The next day, Court denied Defendant's request for a pre-motion conference and instead set a briefing schedule for Defendant's anticipated motion to compel arbitration, or in the alternative, to dismiss. (Dkt. #22).

On July 24, 2020, Defendant filed the instant motion to compel arbitration or, in the alternative, to dismiss, along with a supporting memorandum and several declarations. (Dkt. #27-31). Plaintiff filed his opposition papers on August 24, 2020. (Dkt. #32-33). The motion became

fully briefed and ripe for review when Defendant filed its reply papers on September 14, 2020. (Dkt. #36-38).

## DISCUSSION

### A. Applicable Law

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted). Section 2 of the FAA provides that "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a party to such an agreement to petition a district court for an order compelling arbitration where a counterparty "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of an arbitration agreement. *Id.* § 4. A court ruling on a petition to compel arbitration must decide two issues: (i) whether the parties agreed to arbitrate, and, if so, (ii) whether the scope of that agreement encompasses the claims at issue. *See Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

A court resolving a motion to compel arbitration applies a standard similar to that for summary judgment. *Meyer*, 868 F.3d at 74 (quoting *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). In doing so, "the court

considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (internal quotation marks, alterations, and citations omitted). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91 (2000). A party opposing arbitration may not satisfy this burden through "general denials of the facts on which the right to arbitration depends"; in other words, "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

In accordance with the "strong federal policy favoring arbitration as an alternative means of dispute resolution," a court must resolve any doubts concerning the scope of arbitrable issues "in favor of arbitrability." *Daly* v. *Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *State of N.Y.* v. *Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)), *cert. denied*, 140 S. Ct. 1117 (2020). In so doing, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotation marks and citation omitted).

**B.     Analysis**

The parties do not dispute that Plaintiff assented to the Terms of Use, and that it is a valid, binding agreement. (*See generally* Pl. Opp.).[2] The Court therefore focuses its analysis on the core area of disagreement between the parties — namely, whether Plaintiff's claims are within the scope of the Arbitration Agreement. For the reasons detailed herein, the Court holds that the Terms of Use's Arbitration Agreement applies to Plaintiff's claims.

Although the presumption in favor of arbitrability of disputes "does not apply to disputes concerning whether an agreement to arbitrate has been made," *Applied Energetics, Inc.* v. *NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011), "[i]f the parties have agreed to arbitrate some disputes, the Court must turn to … the scope of the agreement. It is here that the presumption of arbitration applies." *Aviation Fin. Co.* v. *Chaput*, No. 14 Civ. 8313 (CM), 2015 WL 13203653, at *7-8 (S.D.N.Y. Mar. 12, 2015) (citing *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Defendant argues that the broad language of the Arbitration Agreement clearly covers Plaintiff's claims. (Def. Br. 10-12). Plaintiff does not dispute that the language in the Arbitration Agreement is broad, nor that — as read — it encompasses the claims asserted here. (*See* Pl. Opp. 4-7). Rather, Plaintiff

---

[2]     In the interest of completeness, the Court notes that the evidence demonstrates that that Plaintiff agreed to the Terms of Use. (*See* Cosier Decl. ¶¶ 23-24; *see also generally* Pl. Opp. (failing to dispute that Plaintiff agreed to the Terms of Use)). Plaintiff does not raise any arguments that the terms are invalid or unenforceable, and the Court discerns none.

relies solely on the argument that the Terms of Use does not apply because the Membership Agreement displaces it.  (*See id.*).

On its own terms, the Arbitration Agreement is clearly applicable.  This lawsuit is a "dispute, claim, or controversy between [Plaintiff] and [Defendant]" and it "regard[s] an[] aspect of [Plaintiff's relationship with [Defendant]."  (Terms of Use).  And Plaintiff's specific claims fall squarely within the terms of the Arbitration Agreement.  All are covered by the Arbitration Agreement's definition of "dispute," which includes without limitation Plaintiff's tort and contract claims, as well as his statutory claim.  (Terms of Use).

Plaintiff argues that despite the Arbitration Agreement's broad language, it does not apply because the Membership Agreement, which contains no arbitration provision, "is the sole predicate" for this lawsuit.  (Pl. Opp. 4-7).  Plaintiff is correct that his claims are covered by the Membership Agreement.  However, Plaintiff is incorrect when he concludes that his claims therefore cannot be covered by the Arbitration Agreement as well.  Plaintiff reasons that because the subject matter of the Terms of Use is the use of Defendant's "services," such as digital kiosks provided by Defendant at their gyms and Defendant's mobile application, the Court should rewrite the Arbitration Agreement to cover only those disputes that relate to the use of Defendant's "services."  But the Court will not accept Plaintiff's invitation to re-write the parties' agreement.  The Arbitration Agreement covers all disputes "regarding *any aspect of [Plaintiff's] relationship"* with Defendant.  (Terms of Use (emphasis added)).  The parties did not write the arbitration provision such that it applied

11

narrowly only to disputes arising out of the use of Defendant's "services." Parties often draft arbitration clauses that cover only "disputes arising out of or relating to" "a certain subject" or "a certain agreement," *Aviation Fin. Co.*, 2015 WL 13203653, at *8, and the parties could have done so here with respect to the use of Defendant's "services." They knew how to limit their agreements in this manner, notably doing so in the Membership Agreement. However, the parties did not do so here: the Arbitration Agreement has extremely broad language, stating that "any dispute, claim, or controversy between you and [Defendant] regarding any aspect of your relationship with [Defendant]," "WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION." (Terms of Use). And that wording is similar to other arbitration clauses that the Second Circuit has called "classically broad." *See Mehler* v. *Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000). Standing alone, such a broad clause compels arbitration. *Id.*

Nor does the Membership Agreement's lack of an arbitration provision vitiate the Arbitration Agreement. In three key cases, the Second Circuit addressed situations in which parties agreed to an arbitration clause, but then entered into a subsequent but related agreement that could be read to vitiate the prior agreement to arbitrate. First, in *Bank Julius Baer & Co.* v. *Waxfield Ltd.*, the Second Circuit held that an agreement to arbitrate is superseded by a later-executed agreement only if the later agreement "specifically precludes" arbitration. 424 F.3d 278, 284 (2d Cir. 2005). In *Applied Energetics, Inc.* v. *NewOak Capital Markets, LLC*, the Second Circuit

clarified that there is no requirement that the subsequent agreement specifically mention arbitration in order to preclude arbitration. 645 F.3d at 526. And in *Goldman, Sachs & Co.* v. *Golden Empire Schools Financing Authority*, the Second Circuit summarized this doctrine as follows: "In this circuit, an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration," although it is not necessary that the forum selection clause mention arbitration expressly. 764 F.3d 210, 215 (2d Cir. 2014).

Applying the doctrine laid out by the Second Circuit in these three cases, the Court easily concludes that the Arbitration Agreement in the Terms of Use remained in full force and effect, despite the subsequent (though virtually simultaneous) execution of the Membership Agreement. In addition to covering a different subject matter than that of the Membership Agreement, the Arbitration Agreement uses extremely broad language that creates "a presumption of arbitrability and arbitration." *JLM Indus., Inc.* v. *Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004).

Furthermore, nothing in the Membership Agreement "specifically precludes" the application of the arbitration clause. For example, the Membership Agreement does not explicitly revoke the arbitration provision relating to "any dispute, controversy or claim" arising out of disputes over membership fees. (*See generally* Membership Agreement). Neither does it contain any forum selection clause or any other language suggesting that disputes must be brought in court. (*Id.*). *Cf. Goldman Sachs*, 764 F.3d at 216

13

("Unlike the [forum selection] clause in *Bank Julius*, which simply waived objection to jurisdiction in New York, the clause here is all-inclusive and mandatory."); *Applied Energetics*, 645 F.3d at 525-26 (holding subsequent agreement superseded earlier arbitration agreement where subsequent agreement contained forum selection clause that required the parties to "adjudicate" disputes in court New York). Indeed, unlike in *Julius Baer*, *Applied Energetics*, or *Goldman Sachs*, the Membership Agreement does not contain any forum selection clause that may "specifically preclude" the otherwise valid and applicable Arbitration Agreement.

The circumstances surrounding Plaintiff's signing of the Membership Agreement confirm that it was not meant to "specifically preclude" application of the Arbitration Agreement. Prospective members of Defendant's gyms are unable to sign the Membership Agreement without first reviewing and agreeing to the Terms of Use, often signing the Terms of Use mere moments before signing the Membership Agreement. (*See* Cozier Decl. ¶¶ 4-13). Thus, it is natural to read the arbitration clause in the Terms of Use and the Membership Agreement as overlapping rather than as mutually exclusive. The Arbitration Agreement requires arbitration of all disputes that touch on the parties' relationship, while the Membership Agreement simply provides some agreed-upon terms of one element of that relationship. But the Membership Agreement says nothing about resolving disputes over those terms. This reading gives effect to all of the clauses of both agreements. *See Aviation Fin. Co.*, 2015 WL 13203653, at *11.

14

Finally, Plaintiff argues that the Membership Agreement should be read to displace the Terms of Use and its broad arbitration provision because the Membership Agreement contains a merger clause. (Pl. Opp. 6). However, that merger clause states only that the Membership Agreement "constitutes the entire agreement and understanding between the Parties relating to the subject matter hereto and supersedes any oral or other written understanding." But the "subject matter" in the Membership Agreement is distinct from that of either the Terms of Use and/or Arbitration Agreement, and thus the merger clause cannot be read to supersede those agreements on its own terms. What is more, unlike the merger clause in *Applied Energetics*, the Membership Agreement's merger clause does not specify particular agreements that the parties intend should remain in force. *See* 645 F.3d at 523-24. Rather, its function appears to be the same as the function of the merger clause at issue in *Bank Julius*: ensuring that the parol evidence rule is observed. *See Bank Julius*, 424 F.3d at 283. It thus does not vitiate the parties' agreement to arbitrate.

## CONCLUSION

For the reasons stated in this Opinion, Defendant's motion to compel arbitration is GRANTED. The Clerk of Court is ORDERED to terminate the motion at docket entry 17 and to STAY this case. The parties are ORDERED to update the Court on or before April 29, 2021, regarding the status of any arbitration.

SO ORDERED.

Dated: December 30, 2020
       New York, New York

                                        KATHERINE POLK FAILLA
                                        United States District Judge